ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                          :
UNITED STATES OF AMERICA                                  :    **SEALED INDICTMENT**
                                                          :
            - v. -                                        :    23 Cr.  (   )
                                                          :
LARS WINKELBAUER,                                         :
ABILASH KURIEN,                                           :
CARLTON LLEWELLYN,                                        :
ROBERT SCHIRMER,                                          :
SKYE XU,                                                  :    **23 CRIM  133**
BENJAMIN WEI,                                             :
   a/k/a "Ben Wei,"                                       :
ALVARO LOPEZ,                                             :
FABIOLA CINO,                                             :
ORLANDO WONG, and                                         :
PATRICK LAU,                                              :
   a/k/a "Pat Lau,"                                       :
                                                          :
            Defendants.                                   :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## COUNT ONE

**(Conspiracy to Commit Wire Fraud and Honest Services Wire Fraud)**

The Grand Jury charges:

OVERVIEW

1.      From at least in or about 2009 through in or about July 2021, LARS
WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER,
SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO,
ORLANDO WONG, and PATRICK LAU, a/k/a "Pat Lau," the defendants, and others known and
unknown, participated in a massive scheme to defraud Polar Air Cargo Worldwide, Inc. ("Polar"),
a cargo airline headquartered in the Southern District of New York and one of the world's leading

air-cargo companies, operating in North America, South America, Asia, Europe, and the Middle East, of tens of millions of dollars in revenue and the honest services of its employees.

2.     At all relevant times, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, and ROBERT SCHIRMER, the defendants, (collectively, the "Executive Defendants") were senior executives of Polar. SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, a/k/a "Pat Lau," the defendants, (collectively, the "Vendor Defendants") owned and operated various Polar vendors and customers. Throughout the scheme, WINKELBUAER and KURIEN oversaw substantial segments of Polar's business and had visibility into nearly all of Polar's operations. WINKELBAUER and KURIEN orchestrated the scheme, using their positions within Polar to manipulate Polar's procurement and contracting processes for their own and their co-conspirators' benefit, at the expense of Polar and of Polar's legitimate vendors and customers. In particular, the Executive Defendants agreed to accept millions of dollars in kickbacks from the Vendor Defendants and the vendors they controlled or for which they worked, and also reaped substantial financial benefits as a result of secret ownership interests in certain Polar vendors, in exchange for ensuring that those vendors—including the ones controlled by the Vendor Defendants, or which employed the Vendor Defendants—received favorable business arrangements with Polar. The fraud they perpetrated led to pervasive corruption of Polar's business, touching nearly every aspect of the company's operations, for over a decade.

3.     Polar is the result of a 2007 joint venture between a publicly traded airline, headquartered in the Southern District of New York (the "Parent Airline"), and a leading provider of courier and package delivery services (the "Courier Company"). The joint venture was

2

designed, in part, to ensure that the Courier Company had dedicated cargo space on flights operated by Polar, in order to transport parcels in a reliable and timely manner.

4.     From at least in or about 2009 through in or about July 2021, Polar relied heavily on third-party, general sales agents ("GSAs") in the United States to sell the cargo space that was not allocated to the Courier Company. This available cargo space was intended to be sold at shipping rates consistent with market demand. In turn, the GSAs hired by Polar often sold available cargo space to freight forwarding vendors, which had been hired by downstream customers to coordinate transportation logistics for large quantities of goods. For its part, Polar generally paid GSAs based on the amount of cargo sold to freight forwarders. Polar also contracted with ground handling vendors to load and unload cargo, and with trucking vendors to transport cargo from domestic locations to the appropriate airports. Polar also contracted with other partners for a variety of business reasons, including to secure cargo space on airline routes not serviced by Polar flights.

5.     Together, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, a/k/a "Pat Lau," the defendants, and others known and unknown, defrauded Polar by corrupting Polar's relationships with GSAs, freight forwarders, and other vendors, including those providing ground handling and trucking services. Unbeknownst to Polar, the Executive Defendants utilized their positions within Polar to secure, among other things, favorable contracts, valuable cargo space, favorable shipping rates, and enrollment in various incentive programs for the Vendor Defendants and their entities. In return, the Vendor Defendants paid the Executive Defendants kickbacks in various forms, including, for example, in payments calculated per kilo of cargo shipped with Polar,

or as a percentage of the revenue earned as a result of a vendor's relationship with Polar. In addition, the Executive Defendants, in various combinations, held concealed ownership positions in certain companies which contracted with Polar and that were, in at least one case, associated with the Vendor Defendants. As a result, the Executive Defendants received ownership distributions based, in large part, on revenue derived from contracts with Polar—contracts that had been secured and often times renewed due to, in large part, the recommendation of the Executive Defendants with conflicts of interest.

6.     To conceal the kickbacks and conflicted ownership interests from Polar, and thereby to continue the fraud scheme, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, a/k/a "Pat Lau," the defendants, and others known and unknown, often directed the kickbacks and ownership distributions be paid to limited liability companies with non-descript names that were, in fact, controlled by the Executive Defendants. Additionally, the Executive Defendants communicated amongst themselves and with the Vendor Defendants about the scheme primarily using personal email accounts, while the Vendor Defendants conducted official Polar business with the Executive Defendants primarily using their professional email accounts.

7.     From at least in or about 2009 through in or about July 2021, the Executive Defendants, along with two co-conspirators not named herein ("CC-1" and "CC-2"), received unlawful payments, either directly or through various limited liability companies they controlled, in excess of approximately $23 million in kickback payments or disbursements received as a result of their ownership of conflicted companies. Additionally, a financial analysis conducted at Polar's

4

direction estimates that, as a result of the fraudulent scheme, Polar suffered at least approximately $52 million in losses between in or about 2009 and in or about July 2021.

## THE EXECUTIVE DEFENDANTS

8. At various points between in or about 2009 and in or about July 2021, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, and ROBERT SCHIRMER, the defendants, along with CC-1 and CC-2, were employed in senior positions working for Polar.

a. WINKELBAUER was a Polar employee between approximately 2003 and approximately 2007. In 2007, the Courier Company hired him. Although WINKELBAUER was an employee of the Courier Company between in or about 2007 and July 2021, for the majority of his employment with the Courier Company, the Courier Company allowed WINKLEBAUER to "second" at Polar, in other words, to work for Polar in senior leadership roles. Specifically, from in or about 2007 through in or about 2014, WINKELBAUER served as Polar's Vice President of Marketing, Revenue Management, and Network Planning. From in or about 2018 until he was terminated in or about July 2021, WINKELBAUER served as Polar's Chief Operating Officer and Executive Vice President.

b. KURIEN was hired by Polar in or about 2008. From approximately 2008 through approximately 2014, KURIEN served as Senior Director of Business Development and Excellence. In approximately 2014, KURIEN succeeded WINKELBAUER as the Vice President of Marketing, Revenue Management, and Network Planning, a position in which he remained until his employment was terminated in or about July 2021.

c. LLEWELLYN was hired by Polar in or about 2006. In or about January 2017, LLEWELLYN was named the Vice President of Operations, System Performance, and

5

Quality for Polar, a position in which he remained until his employment was terminated in or about July 2021.

    d.  SCHIRMER was hired by Polar in or about 2010. In or about 2013, SCHIRMER was promoted to Senior Director of Customer Services for the Americas, a position in which he remained until his employment was terminated in or about July 2021.

    e.  CC-1 was hired by Polar in or about 2007, as Vice President of Sales and Marketing for the Americas, a position in which he remained until his employment was terminated in or about July 2021.

    f.  CC-2 was hired by Polar in or about 2002, as a Regional Sales Manager. In or about 2010, CC-2 was named the Senior Director of Global Sales, a position in which he remained until his employment was terminated in or about July 2021.

    9.  Through these employment positions, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, and ROBERT SCHIRMER, the defendants, along with CC-1 and CC-2, gained significant knowledge of and influence over Polar's operations, including sales, contracting, and selection of vendors. WINKELBAUER and KURIEN, in particular, oversaw significant segments of Polar's business and, thus, had visibility into Polar's sales, customer relationships, and operations, including ground handling and trucking. In general, the Executive Defendants often had the ability to propose vendors, to advocate on behalf of certain vendors or customers, and to exercise significant influence over both Polar's selection of vendors and the rates offered to its customers.

<p align="center">THE GSA-RELATED ILLICIT PAYMENTS</p>

    10.  From in or about 2009 through in or about July 2021, Polar relied heavily upon GSAs in the United States to sell available cargo space, often to freight forwarders. GSAs typically

<p align="center">6</p>

handled sales for specific geographic regions, and were compensated primarily based on how much cargo they sold on behalf of Polar. At relevant points during this period, in various combinations, LARS WINKELBAUER, ABILASH KURIEN, and ROBERT SCHIRMER, the defendants, agreed with BENJAMIN WEI, a/k/a "Ben Wei," and FABIOLA CINO, the defendants, and others, to defraud Polar through the payment of kickbacks to WINKELBAUER, KURIEN, SCHIRMER, and CC-1, or by concealing the vendor ownership interests of WINKELBAUER, KURIEN, and CC-1, in exchange for favorable business arrangements and contracts with Polar. Before discovering the fraud in or about July 2021, Polar had no knowledge of the kickbacks paid by the GSAs, or that any of the Executive Defendants owned a Polar GSA.

11. Three particular GSA-related arrangements are set forth in greater detail below.

## *Griffin*

12. Griffin Cargo ("Griffin") is owned and operated by BENJAMIN WEI, a/k/a "Ben Wei," the defendant, and others. Between in or about 2003 and at least in or about 2021, Polar contracted with Griffin to sell domestic cargo space. In or about early 2012, LARS WINKELBAUER and ABILASH KURIEN, the defendants, along with CC-1, entered into an agreement with WEI and others, to accept kickbacks in exchange for awarding Griffin—which already served as Polar's GSA for the Pacific Northwest—a contract to represent Polar in the Northeast and Texas. More specifically, WEI agreed to pay WINKELBAUER, KURIEN, and CC-1 a percentage of Griffin's net profits derived from its contracts with Polar on approximately a monthly basis.

13. In total, WEI and others directed payment of at least approximately $3 million from profits derived from Polar to limited liability companies controlled by WINKELBAUER, KURIEN, and CC-1.

7

*Ultimate*

14.     Ultimate Logistics GSA, LLC ("Ultimate") is operated by a third co-conspirator not named herein ("CC-3"). Since in or about 2013, Ultimate has been co-owned in equal parts by CC-3 and by CC-1, and LARS WINKELBAUER and ABILASH KURIEN, the defendants, through limited liability companies that they control. Between in or about 2013 and in or about 2021, CC-3 was falsely presented to Polar as the sole owner of Ultimate. In exchange for receiving distributions based on their concealed and conflicted ownership interests in Ultimate, WINKELBAUER, KURIEN, and CC-1 used their employment positions with Polar to ensure that Ultimate received favorable contracts, including contracts to serve as Polar's GSA in the Midwest region, beginning in or about 2013. In or about 2019, WINKELBAUER, KURIEN, and CC-1 also arranged for the expansion of Ultimate's contract with Polar to include the profitable Chicago, Illinois region, without any competitive bidding process.

15.     As a result of the efforts of WINKELBAUER, KURIEN, and CC-1, Ultimate was paid substantial commissions by Polar and, in turn, WINKELBAUER, KURIEN, and CC-1 collected substantial distributions as co-owners of Ultimate. For example, on or about January 17, 2015, KURIEN emailed CC-1, CC-3, and WINKELBAUER "the breakdown for December" 2014, setting forth that Ultimate had earned a commission of approximately $104,000 from Polar in the prior month, and the distributions to be made to CC-3 and the limited liability companies associated with CC-1, WINKLEBAUER, and KURIEN.  WINKELBAUER, whose limited

liability company was set to receive approximately $22,715 based on Ultimate's work for Polar in December 2014, replied, in substance and in part, "WTF????????? What? Amazing."

16.     In total, Ultimate paid approximately $7 million in ownership distributions from profits derived from Polar to limited liability companies controlled by WINKELBAUER, KURIEN, and CC-1.

*Gateway*

17.     Gateway Cargo Consolidators, LLC ("Gateway") is owned and operated by FABIOLA CINO, the defendant, and the spouse of ALVARO LOPEZ, the defendant. From in or about November 2015 through at least in or about 2021, Polar contracted with Gateway to sell domestic cargo space for the Miami region. Beginning in at least in or about early 2016, CINO agreed to pay kickbacks to CC-1, and to ABILASH KURIEN and ROBERT SCHIRMER, the defendants, in the form of a percentage of Gateway's net profits arising from its contract with Polar, in exchange for Polar's use of Gateway as its GSA in the Miami region and other favorable business arrangements. In or about August 2020, at or about the same time that Gateway's territory was expanded to include Central America, and its sales commission increased, CINO, CC-1, KURIEN, and SCHIRMER agreed to share the kickback payments paid by Gateway with LARS WINKELBAUER, the defendant.

18.     In total, Gateway paid in excess of $900,000 in kickbacks, from profits derived from Polar, to limited liability companies controlled by KURIEN, SCHIRMER, WINKELBAUER, and CC-1.

THE FREIGHT FORWARDER-RELATED ILLICIT PAYMENTS

19.     From in or about 2009 through in or about July 2021, Polar contracted with freight forwarders to sell available cargo space on behalf of downstream shipping customers, who, in turn,

paid freight forwarders to secure cargo space and coordinate logistics. At relevant points during this period, BENJAMIN WEI, a/k/a "Ben Wei," ORLANDO WONG, ALVARO LOPEZ, and PATRICK LAU, a/k/a "Pat Lau," the defendants, and others, defrauded Polar by agreeing to pay and actually paying kickbacks to, in various combinations, LARS WINKELBAUER, ABILASH KURIEN, and ROBERT SCHIRMER, the defendants, and CC-1 and CC-2, in exchange for favorable rates for cargo space, preferred access to cargo space, and involvement in customer incentive programs. These kickbacks were typically calculated based on how many kilograms of cargo the freight forwarders had shipped with Polar during a particular period. At no point before the discovery of the fraud in or about July 2021 were the kickbacks from freight forwarders known to Polar.

20.     Illicit payments made by four particular freight-forwarders are set forth in greater detail below.

*Vizion & Able*

21.     Vizion Logistics, LLC ("Vizion") is owned and operated by BENJAMIN WEI, a/k/a "Ben Wei, and others. Beginning in or about 2004, WEI approached CC-2 about accepting kickbacks in exchange for providing favorable cargo rates and preferred allocation of cargo space to Vizion. CC-2 agreed to accept kickbacks from WEI and others, and kept those kickbacks for himself. In or about 2009—not long after CC-1 joined Polar—CC-1 and CC-2 agreed to accept and share kickback payments made to them by Vizion, as well as by Able Freight SVCS, LLC ("Able"), a freight forwarder owned and operated by ORLANDO WONG, the defendant. In or about 2010, CC-1 and CC-2 agreed to share a percentage of the kickbacks they collected from WEI and WONG on behalf of Vizion and Able, respectively, with LARS WINKELBAUAER, the defendant. In exchange for these kickbacks, Vizion and Able were afforded favorable business

arrangements with Polar, including for example, participation in incentive programs and preferential cargo rates. Able, in particular, was afforded these benefits despite the fact that Able often had payment delinquencies with Polar.

22.     In total, between in or about 2009 and in or about July 2021, Vizion and Able, through their respective owners, WEI and WONG, paid at least approximately $1,663,004 in kickbacks to limited liability companies controlled by WINKELBAUER, CC-1, and CC-2.

*COD*

23.     Cargo on Demand, Inc. ("COD") is operated by PATRICK LAU, a/k/a "Pat Lau," the defendant. Between in or about 2016 and in or about July 2021, LAU paid kickbacks to CC-1 and to LARS WINKELBAUER, ABILASH KURIEN, and ROBERT SCHIRMER, the defendants, in exchange for favorable business arrangements with Polar, including access to cargo space on preferred terms, despite COD often being past due on its accounts with Polar. The payment of these kickbacks was often facilitated by ALVARO LOPEZ, the defendant, in his capacity as a sales employee of Griffin.

24.     LAU and KURIEN corresponded on several occasions about the favorable treatment afforded to COD as a result of these kickbacks. For example, on or about March 9, 2021, LAU contacted KURIEN to register a complaint about the rates being offered to COD to ship cargo with Polar. When KURIEN pushed back, LAU wrote to KURIEN, in substance and in part, "Well Abi, just so you know I am doing my business not just for myself, but also protecting the Brotherhood and is pie ya . . ." KURIEN responded to LAU, in substance and in part, "Just so you know, your shipments don[']t cover the whole cost of transportation and is a loss of Polar and we cannot be seen further reducing that rate from where it is agreed to be. I don[']t like it when you say you are protecting the brotherhood because you know very well - we have also been

protecting you…You were late many months on the receivables[,] etc[.][,] and we still made sure you are not put on cash and your BSA remains valid." KURIEN's reference to COD's "BSA" is a reference to the "blocked space agreement" between COD and Polar, under which Polar guaranteed space for COD at certain rates. KURIEN later forwarded the exchange to SCHIRMER, who responded to KURIEN, in substance and in part, "Should we pay him to move the cargo…?"

25.     In total, between in or about 2016 and in or about July 2021, COD, through its owner, LAU, paid approximately $1.6 million in kickbacks either directly to CC-1, CC-2, KURIEN, WINKELBAUER, and SCHIRMER, or through limited liability companies that they controlled.

*Fato*

26.     Fato LLC ("Fato") is owned and operated by ALVARO LOPEZ, the defendant. In or about 2017, LOPEZ, at times in conjunction with FABIOLA CINO, the defendant, began to pay kickbacks on an intermittent basis to CC-1 and to ABILASH KURIEN and ROBERT SCHIRMER, the defendants, in exchange for favorable business arrangements and contracts with Polar, including preferential cargo space terms and identification as a preferred freight forwarder of Polar. These benefits were awarded to Fato despite Fato maintaining substantial past due balances in its accounts with Polar. In or about October 2018, LOPEZ began to pay kickbacks to LARS WINKELBAUER, the defendant, in addition to the kickbacks paid to CC-1, KURIEN, and SCHIRMER. Typically, LOPEZ paid these kickbacks based on a rate per kilogram that Fato shipped with Polar. In total, between in or about 2017 and in or about July 2021, Fato, through its

owner, LOPEZ, paid at least approximately $800,000 in kickbacks to CC-1, KURIEN, SCHIMER, and WINKELBAUER either directly or through limited liability companies that they controlled.

THE GROUND HANDLING AND TRUCKING-RELATED ILLICIT PAYMENTS

27.     Polar also utilized third-party vendors for ground handling and trucking.  Ground handling vendors were responsible for loading and unloading cargo, storing cargo, coordinating ground equipment, and performing other logistical services.  Trucking vendors were responsible for transporting cargo to and from airports to be loaded onto or delivered from Polar flights.  From in or about in or about 2019 through in or about July 2021, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, the defendants, agreed with ORLANDO WONG, the defendant, and others, to defraud Polar by concealing the ownership interests of WINKELBAUER, KURIEN, LLEWELLYN, and CC-2 in A-1 Handling, LLC ("A-1 Handling"), a ground handling vendor, in exchange for favorable business arrangements and contracts with Polar.  Additionally, WINKELBAUER, KURIEN, and LLEWELLYN agreed with others to defraud Polar by accepting kickbacks from a particular trucking vendor (the "Trucking Vendor") in exchange for advocating for favorable contractual arrangements for the Trucking Vendor with Polar.  At no point before the discovery of the fraud in or about July 2021 were the kickbacks paid by the Trucking Vendor, or the conflicted ownership arrangement with A-1 Handling, known to Polar.

28.     Two ground handling and trucking-related arrangements are set forth in greater detail below.

### A-1 Handling

29.     A-1 Handling is co-owned by ORLANDO WONG, the defendant, and a limited liability company ("LLC-1") registered in Wyoming in the names of family members of LARS WINKELBAUER, ABILASH KURIEN, and CARLTON LLEWELLYN, the defendants, and

13

CC-2. A-1 Handling is, in fact, controlled by WINKELBAUER, KURIEN, LLEWELLYN, and CC-2. WINKELBAUER, KURIEN, LLEWELLYN, and CC-2 took concerted steps to conceal their involvement in LLC-1. For example, on or about June 3, 2020, a representative of a company that was hired to act as LLC-1's registered agent emailed KURIEN indicating that the company would no longer provide "nominee service." KURIEN responded, asking, in substance and in part, "[i]f there is no nominee service and if someone searches who the company belongs to, they will be able to see the four names?" The representative responded that the "names are not public record."

30. A-1 Handling was formed in or about 2019 as part of a concerted effort by WINKELBAUER, KURIEN, LLEWELLYN, CC-2, and WONG to replace Polar's existing ground handling vendor at Los Angeles International Airport ("LAX"). As part of this effort, A-1 Handling was falsely presented by WONG to Polar as being run and controlled solely by WONG. Between in or about March 2019 and in or about April 2020, WINKELBAUER, KURIEN, LLEWELLEN, and CC-2 used their positions at Polar to ensure that A-1 Handling was selected as Polar's ground handler at LAX, despite internal opposition from other employees at Polar and the Parent Airline.

31. In or about early 2021, A-1 Handling submitted a request for proposal to provide warehousing services for Polar in the Chicago region, despite never having previously operated in Chicago. During the selection process, LARS WINKELBAUER, ABILASH KURIEN, and CARLTON LLEWELLEN, the defendants, shared information with ORLANDO WONG, the defendant, about what was needed to successfully bid for the contract. Although A-1 Handling was among the highest cost bidders for the Chicago ground handling contract, A-1 Handling was selected by Polar to provide the Chicago warehousing services, based largely on the conflicted

14

recommendation of LLEWELLYN. In total, between 2020 and 2021, Polar paid A-1 Handling more than $5,000,000 for ground handling services.

### *The Trucking Vendor*

32.     From at least in or about 2009 through at least in or about 2021, Polar contracted with the Trucking Vendor. The Trucking Vendor is owned and operated by two individuals (respectively the "Trucking Owners"). Polar typically contracted with several trucking vendors selected based on a variety of variables, including location, equipment availability, and pricing. In or about 2019, the Trucking Vendor, through a company controlled by the Trucking Owners, began making regular payments to a limited liability company ("LLC-2") registered in the names of family members of LARS WINKELBAUER, ABILASH KURIEN, and CARLTON LLEWELLYN, the defendants, and, in fact, controlled by WINKELBAUER, KURIEN, and LLEWELLYN. In exchange, WINKELBAUER, KURIEN, and LLEWELLYN began assisting the Trucking Vendor in seeking an exclusive contract with Polar and advocating within Polar for an exclusive contract with the Trucking Vendor. Despite significant internal opposition from other employees at Polar, the exclusive contract proposal with the Trucking Vendor continued to move forward at WINKELBAUER's and LLEWELLYN's insistence, though it was not executed before WINKLEBAUER, KURIEN, and LLEWELLYN were terminated by Polar in or about July 2021.

33.     In total, the Trucking Vendor, through a company controlled by the Trucking Owners, paid in excess of approximately $1 million in kickbacks to WINKELBAUER, KURIEN, and LLEWELLYN through LLC-2.

### THE SKY X AIRLINES KICKBACKS

34.     Sky X Airlines, LLC ("Sky X") is owned and operated by SKYE XU, the defendant. XU also owned and operated a Polar freight forwarder customer, which had, at times

between in or about 2017 and in or about 2020, paid CC-2 for consulting work.  In exchange, CC-2, among other things, assisted XU in securing cargo space with Polar for XU's freight forwarder. In or about September 2020 and again in or about March 2021, Sky X entered into capacity purchase agreements with Polar, under which Sky X purchased cargo space from passenger airlines—which had an abundance of available space at the time, as a result of the COVID-19 pandemic—which Polar then offered to its customers to transport cargo.  The capacity purchase agreements were negotiated and executed in large part by ABILASH KURIEN, the defendant, as part of his role at Polar.  The agreements provided for the payment of a commission to Polar, with the remaining revenues to be passed on to Sky X.  In exchange for these favorable business arrangements with Polar, effectuated by KURIEN, XU agreed to pay kickbacks to LARS WINKELBAUER, the defendant, and to KURIEN and CC-2 through limited liability companies they controlled.  At no point before the discovery of the fraud scheme in or about July 2021 was this kickback arrangement known to Polar.  In total, between in or about September 2020 and in or about July 2021, Sky X, at the direction of SKYE XU, paid in excess of $4.4 million from profits derived from its contract with Polar to limited liability companies controlled by KURIEN, WINKELBAUER, and CC-2.

## POLAR'S DISCOVERY
## OF THE CONFLICTED OWNERSHIP ARRANGEMENTS AND KICKBACKS

35.     In or about the Summer of 2021, Polar discovered documentary evidence of the conflicted ownership arrangements and kickback agreements described above.  Shortly thereafter, in or about July 2021, Polar terminated the employment of LARS WINKELBAUER, ABILASH

16

KURIEN, CARLTON LLEWELLYN, and ROBERT SCHIRMER, the defendants, and reported the conduct to law enforcement authorities.

<p style="text-align:center">STATUTORY ALLEGATIONS</p>

36.     From at least in or about 2009 through in or about July 2021, in the Southern District of New York and elsewhere, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, and honest services wire fraud, in violation of Title 18, United States Code, Section 1346.

37.     It was a part and an object of the conspiracy that LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, WINKELBAUER, KURIEN, LLEWELLYN, and SCHIRMER secretly received money and other items of value paid by XU, WEI, LOPEZ, CINO, WONG, LAU, and others—the owners of certain vendors and customers of Polar—in exchange for, among other things, advocating for and securing

<p style="text-align:center">17</p>

favorable contracts, shipping rates, and other incentives from Polar for the benefit of those vendors and customers.

38.     It was a further part and an object of the conspiracy that LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud another of its right of honest services through bribery and kickbacks by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1346, to wit, WINKELBAUER, KURIEN, LLEWELLYN, and SCHIRMER secretly received money and other items of value paid by XU, WEI, LOPEZ, CINO, WONG, LAU, and others—the owners of certain vendors and customers of Polar—in exchange for, among other things, advocating for and securing favorable contracts, shipping rates, and other incentives from Polar for the benefit of those vendors and customers.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud)

The Grand Jury further charges:

39.     The allegations contained in paragraphs 1 through 35 are repeated and realleged as if fully set forth herein.

40.     From at least in or about 2009 through in or about July 2021, in the Southern District of New York and elsewhere, LARS WINKELBAUER, ABILASH KURIEN, CARLTON

18

LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, WINKELBAUER, KURIEN, LLEWELLYN, and SCHIRMER secretly received money and other items of value paid by XU, WEI, LOPEZ, CINO, WONG, LAU, and others—the owners of certain vendors and customers of Polar—in exchange for, among other things, advocating for and securing favorable contracts, shipping rates, and other incentives from Polar for the benefit of those vendors and customers.

(Title 18, United States Code, Sections 1343 and 2.)

## **COUNT THREE**

### **(Honest Services Wire Fraud)**

The Grand Jury further charges:

41. The allegations contained in paragraphs 1 through 28 are repeated and realleged as if fully set forth herein.

42. From at least in or about 2009 through in or about July 2021, in the Southern District of New York and elsewhere, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, and ROBERT SCHIRMER, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud another of its right of honest services through bribery and kickbacks by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication

19

in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, WINKELBAUER, KURIEN, LLEWELLYN, and SCHIRMER secretly received money and other items of value from certain vendors and customers of Polar, in exchange for, among other things, advocating for and securing favorable contracts, shipping rates, and other incentives from Polar for the benefit of those vendors and customers.

(Title 18, United States Code, Sections 1343, 1346, and 2.)

## COUNT FOUR

### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

43.     The allegations contained in paragraphs 1 through 28 are repeated and realleged as if fully set forth herein.

44.     From at least in or about 2009 through in or about July 2021, in the Southern District of New York and elsewhere, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

45.     It was a part and object of the conspiracy that LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, and others known and unknown, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would

and did conduct and attempt to conduct such financial transactions, which transactions affected interstate and foreign commerce and involved the use of a financial institution which is engaged in, and the activities of which affect, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, honest services wire fraud, in violation of Title 18, United States Code, Section 1346, and wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), to wit, WINKELBAUER, KURIEN, LLEWELLYN, and SCHIRMER agreed with XU, WEI, LOPEZ, CINO, WONG, LAU, and others, who are the owners of certain vendors and customers of Polar, to route illicit payments representing the proceeds of honest services fraud and wire fraud schemes to limited liability companies and associated bank accounts that the Executive Defendants opened and controlled, in a manner designed to conceal the Executive Defendants' relationships with the Vendor Defendants, and the defendants' involvement in the fraud schemes charged in Counts One through Three of this Indictment.

(Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATIONS

46.     As the result of committing the wire fraud offenses charged in Counts One through Three of this Indictment, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, and ROBERT SCHIRMER, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money

in United States currency representing the amount of proceeds traceable to the commission of said offenses.

47. As the result of committing the wire fraud offenses charged in Counts One and Two of this Indictment, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

48. As a result of committing the money laundering offense charged in Count Four of this Indictment, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

**<u>Substitute Assets Provision</u>**

49. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without

difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and

Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the

defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)


FOREPERSON
*3-13-23*

DAMIAN WILLIAMS
United States Attorney


*03/13/2023*

*(CA)*

SEALED INDICTMAT FILED

WARRANT WARRANTS

KN MAMAN

USMJ

23